# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| DONALD E. BAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 3:13-CV-372 |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## **OPINION AND ORDER**

Donald E. Baker, a *pro se* prisoner, filed a habeas corpus petition challenging a prison disciplinary proceeding. (DE 1). For the reasons set forth below, the petition (DE 1) is **DENIED**.

BACKGROUND

On October 1, 2012, Baker was found guilty of threatening a staff member under cause number ISP # 12-09-0275. The charge was initiated on September 18, 2012, when Corrections Officer L. Winters wrote a conduct report stating as follows:

> On 9-17-12 at Approx. 5:25 a.m. I Ofc. Winters was standing inside checkpoint 5 as chow-lines were coming back Offender Baker was pushing Offender Anglin "Wheelchair" [through] the metal [detector]. Upon exiting Offender Baker [and] Offender Anglin did not pass the metal [detector] that is inside of ckpt 5. I ask Offender Baker to come back [through], and clear it. Offender Baker replied "I know that bitch." I asked Offender Baker what did he say, he said you heard me bitch. As Offender Baker was walking pushing Offender Anglin he, Offender Baker, was talking out loud saying out loud as Offender Baker was walking down the sidewalk to F-dorm, "I'll get me an knife to stab that bitch." Offender Anglin told

> Offender Baker, "Who that bitch Winters" Offender Baker
> replied, "Yea I hate that stupid bitch."

(DE 4-1.)

On September 21, 2012, Baker was formally notified of the charge and given a copy of the conduct report. (DE 4-1, 4-2.) He pled not guilty and requested a lay advocate. (DE 4-2.) He requested a statement from Anglin, and did not request any physical evidence, but stated that he would bring his own statement to the hearing. (*Id.*) A witness statement was obtained from Anglin, who stated as follows:

> I was outside of check point five, when Baker went back to clear the metal detector, and before he got back inside the officer went off on him and he said shut up I'm going through the metal [detector], but he did not say anything about stabbing her. She just made that part up, she is just trying to start trouble with anybody. This is not the first time we have had trouble with her, there are two other witnesses in this case. One is Mr. Petroff and other James Lofton.

(DE 4-3 at 8.) Statements were also submitted by Paul Petroff, a GED instructor at the prison, and inmate James Lofton.[1] Petroff stated as follows:

> On Monday September 17, 2012, at approximately 5:30 a.m. I, Mr. Paul D. Petroff, was standing in Checkpoint 5 (the Backstreet Checkpoint). I had just entered the building behind offender Larry Anglin (#141199) and his wheelchair pusher (whose name I did not know). When the wheelchair pusher pushed Mr. Anglin through the metal detector, the detector went off (due to the metal contained in the wheelchair). As offender Anglin and his wheelchair pusher continued on, Officer Winters

---

[1] It appears from the record that Anglin contacted these witnesses and asked them to submit statements. (DE 1-2 at 2, DE 4-3 at 6.)

2

> told the wheelchair pusher that he would need to go through the metal detector again.
>
> When Officer Winters made this request, the wheelchair pusher responded with several comments in a loud but mumbled manner. I could determine that his tone was confrontational, but I could not determine exactly what he said. Eventually, he did go through the metal detector, and he was able to clear the machine with no difficulty. Following his departure, Officer Winters unlocked the door to Backstreet, and I exited the Checkpoint and made my way to my assigned work station.

(DE 4-3 at 7.) Lofton stated as follows:

> About five seconds after Larry Anglin and his wheelchair pusher entered checkpoint 5, so did I. When I entered the checkpoint I heard the wheelchair pusher arguing with the officer in the checkpoint. Although the argument continued after I left the checkpoint, I did not hear the wheelchair pusher threaten the officer in the checkpoint.

(DE 4-3 at 5.)

On October 1, 2012, a hearing was held on the charge. (DE 4-3 at 1.) Baker submitted a statement describing his own version of events. (DE 4-3 at 3-4.) He claimed that when Officer Winters told him to go back through the metal detector, he told her to "kiss my butt," but claimed he did not threaten her. (*Id.*) He further claimed that the officer "had it in" for him because he had filed grievances against her in 2011. (*Id.*) Upon considering the conduct report, the witness statements, and Baker's own statement, the hearing officer found him guilty. (*Id.*) Baker filed administrative appeals, arguing that he did not receive a fair hearing because, in his words, "I told [the hearing officer] I did not threaten Ofc. Winters at any time, and she act[ed] like she didn't care that I said that." (DE 4-4.) His appeals were denied. (DE 4-4, 4-5.)

3

DISCUSSION

When prisoners lose earned time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charge; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the hearing officer's determination. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Baker's petition is not a model of clarity, but it is apparent that he challenges the sufficiency of the evidence.[2] In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

---

[2] Baker formulates his first claim as follows: "The DHB Officer abused her discretion by ignoring the other witness statements and relying only on the conduct report regardless of errors and falsehoods." (DE 1-2 at 3.) "Abuse of discretion" is not a cognizable claim under *Wolff* or *Hill*, but his claim can be read to challenge the sufficiency of the evidence on which the hearing officer relied.

4

"[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn a guilty finding only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994). Furthermore, a hearing officer is permitted to rely on circumstantial evidence to establish guilt. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992).

Upon review, there is sufficient evidence to support the hearing officer's determination that Baker was guilty of threatening. Officer Winters reported that Baker was upset with her on the date of this incident when she told him to go back through the metal detector. She reported that in response he called her a bitch, and then stated loudly to Anglin that he would get a knife "and stab that bitch." (DE 4-1 at 1.) Baker claimed he never threatened her, but his own statement corroborated other aspects of Officer Winter's account, including that he had been told to go back through the metal detector and was angry as a result. (DE 4-3 at 3-4.) Anglin's account also confirmed that Baker was perturbed with Officer Winters during this incident. (DE 4-3 at 8.) Although Anglin and Baker both claimed that Baker did not threaten Officer Winters, the hearing officer was permitted to make her own

5

assessment of their credibility, and was not required to simply accept their accounts. Indeed, their accounts were not even consistent with each other, since Anglin stated that Baker told Officer Winters to "shut up," whereas Baker claims he told her to "kiss my butt." (DE 4-3 at 4, 8.)

Baker assigns much significance to the statements of Lofton and Petroff, who he views as unbiased third-party witnesses, but neither of their statements were actually exculpatory. Instead, both confirmed that Baker had a verbal altercation with Officer Winters on the date in question. Lofton stated that while he was there he did not hear any threats, but he acknowledged that the altercation was still going on when he left the area. (DE 4-3 at 5.) Petroff confirmed that Baker was angry with Officer Winters and made several remarks to her in a loud and "confrontational" tone, although he could not actually hear what was said. (*Id.* at 7.) Neither of these statements directly undermine Officer Winters' account.

The hearing officer was not required to credit Baker's denials or prove his guilt beyond a reasonable doubt; the question is solely whether there is "some evidence" to support her determination, and that standard is satisfied. *See Hill*, 472 U.S. at 457 ("Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of

evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination). Accordingly, this claim is denied.

Baker may also be claiming that he was denied the right to an impartial decision-maker. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Due process prohibits a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* However, due process is not violated simply because the hearing officer knew the inmate, presided over a prior disciplinary case, or had some limited involvement in the event underlying the charge. *Id.*

Here, Baker does not clearly explain why he believes the hearing officer was biased, but there is no indication that she was involved in any way in the events underlying the charge. He appears to believe the hearing officer violated internal prison policies in connection with her handling of the case, but even if this is true, it would not provide a basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas

relief cannot be granted for violations of state law); *Hester v. McBride*, 966 F. Supp. 765, 774-75 (N.D. Ind. 1997) (claim premised on violation of prison policy was not cognizable in federal habeas proceeding). He also suggests that she was biased because she rejected his claim that he did not threaten Officer Winters, but adverse rulings alone do not establish impermissible bias. *Liteky v. United States*, 510 U.S. 540, 555–56 (1994). Baker has failed to establish a violation of his federal due process rights.

Baker also appears to claim that the hearing officer's written decision was inadequate. The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). Here, the hearing officer's report indicated that she considered the witness statements, the conduct report, and Baker's own statement, and decided to credit the conduct report.[3] (DE 4-3 at 1-2.) Her statement is not lengthy, but it adequately identified the evidence relied on and illuminated the basis for her decision, which was that she chose to credit Officer Winter's account over Baker's denials. The written statement the hearing officer provided

---

[3] The conduct report originally stated in error that the incident occurred on September 18, 2012, instead of September 17, 2012. (DE 4-1.) The hearing officer confirmed with Officer Winters that September 17, 2012, was the correct date, and that she had simply made a scriveners error in completing the report. (DE 4-3 at 1-2.) Baker does not raise any argument that he was unable to mount a defense or otherwise prejudiced by this minor error. Indeed, it is apparent from his statement submitted to the hearing officer that he was well aware of the underlying facts giving rise to the conduct report. (*See* DE 4-3 at 3-4.)

satisfied the minimal requirements of due process, and therefore this claim is denied.

Baker next claims that he was denied the right to present exculpatory evidence. As the respondent points out, principles of exhaustion that apply to federal review of criminal convictions also apply to review of prison disciplinary proceedings. *See Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Markham v. Clark*, 978 F.2d 993, 994-95 (7th Cir. 1992). Before seeking federal habeas relief, a prisoner must take all available administrative appeals, and must raise in those appeals any issue on which he seeks federal review. *Eads*, 280 F.3d at 729. An inmate's failure to properly exhaust his claims in the state administrative process means the claims are procedurally defaulted. *Id.*

Here, Baker did not raise any claim about the denial of exculpatory evidence in his administrative appeals. (*See* DE 4-3.) He cannot raise a claim here that was not properly presented in the administrative process. *Eads*, 280 F.3d at 729. Baker filed a traverse in support of his petition, but he did not respond to the state's procedural default argument. (*See* DE 7.) Thus, he has not established cause and prejudice for setting aside his procedural default, and the court cannot reach his claim on the merits. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003).

Assuming *arguendo* the court could reach this claim, Baker has not demonstrated an entitlement to habeas relief. A prisoner has a limited right to present witnesses and evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer has considerable discretion with respect to witness and evidence requests, and may deny requests that threaten institutional safety or are irrelevant, repetitive, or unnecessary. *Piggie*, 342 F.3d at 666. Furthermore, due process only requires access to witnesses and evidence that are exculpatory. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

Here, the record shows that Baker requested a statement from Anglin at the time of screening, and that statement was obtained and considered. (DE 4-2, 4-3 at 8.) He also indicated that he would be bringing his own statement to the hearing, which he did, and this was also considered. (DE 4-2, 4-3 at 3-4.) There is nothing to reflect that Baker requested any other exculpatory evidence when he had the opportunity to do so, and he cannot fault the hearing

officer for failing to consider evidence he did not properly request. *See Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002).

Nor has he demonstrated prejudice. It appears Baker wanted to obtain copies of grievances he filed against Officer Winters more than a year prior to this incident. (*See* DE 1-2 at 8.) Such evidence, even if it had been properly requested, would not directly undermine Officer Winters' account of what occurred on the date in question. Furthermore, the hearing officer was already aware from Baker's statement that he believed Officer Winters had fabricated the entire charge because of grievances he filed against her. (DE 4-3 at 4, 8.) There is nothing to reflect that reviewing the actual grievances from a year earlier would have made any difference in her decision-making. In short, Baker has not demonstrated a due process error, even if the court could consider this claim.

In a related vein, Baker claims that his rights were violated because the entire charge was false. "[P]risoners are entitled to be free from arbitrary actions of prison officials." *McPherson*, 188 F.3d at 787. However, "even assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Id.* In other words, the protections to which Baker was entitled are the protections afforded by *Wolff*, and as discussed above, he has not

established a violation of his *Wolff* rights. Accordingly, he has not demonstrated an entitlement to habeas relief.

CONCLUSION

For the reasons set forth above, the petition (DE 1) is **DENIED**.

DATED:  January 14, 2014          /s/RUDY LOZANO, Judge
                                  United States District Court